AMBRO, Circuit Judge, *407 Marie Curto wanted to swim with her family after work. Steve Lusardi wanted to swim with his wife, who had disabilities after a series of strokes and needed pool therapy to recover. But they lived at A Country Place, and its Condominium Association had adopted rules segregating use of the communal pool by sex. By 2016 over two-thirds of all swimming hours throughout the week were sex-segregated. After they were fined for violating this policy, Curto and the Lusardis sued, alleging violations of the federal Fair Housing Act (sometimes referred to as the "FHA"), 42 U.S.C. §§ 3601 et seq ., and New Jersey state law.
The District Court granted summary judgment to the Condominium Association because, in its words, "the gender-segregated schedule applies to men and women equally." Curto v. A Country Place Condominium Assoc. , 2018 WL 638749, at *4 (D.N.J. 2018). We disagree. On the facts before us, the pool schedule discriminates against women in violation of the FHA. We need not determine whether sex-segregated swimming hours necessarily violate the FHA, or whether a sufficiently limited and more even-handed schedule might be justifiable, because the schedule actually adopted by the Condominium Association is plainly unequal in its allotment of favorable swimming times. Thus we reverse.
I. Background
A Country Place Condominium Association, Inc. is a "55 and over" age-restricted condominium association located in Lakewood, New Jersey. Lakewood has a large and growing Orthodox Jewish population, and so does A Country Place; by 2016, when the events in this litigation took place, approximately two-thirds of its residents were Orthodox.
One of the amenities at A Country Place is its community pool, which reopened in 2011 after being closed for renovations. It is maintained using funds from the $215 monthly maintenance fee paid by each of the community residents. After the pool reopened, the Condominium Association adopted rules for pool use creating certain hours when only members of a single sex were allowed to swim. This was done to accommodate the Orthodox principle of tznius , or modesty, according to which it is improper for men and women to see each other in a state of undress-including bathing attire. This principle-according to Fagye Engleman, the Association's representative in this litigation-means that the Orthodox residents cannot comfortably *408 swim at a time when members of the opposite sex might be present at the pool.
Prior to 2016 the schedules provided for only a handful of sex-segregated swimming hours throughout the week, but as the Orthodox membership at A Country Place increased, the Association increased the number of sex-segregated hours. Thus in 2016 the Association's Board of Directors adopted a new schedule with greatly increased segregated swimming hours:
Under this schedule, a total of 31.75 hours each week were defined as "men's swim," when women were prohibited from using the pool; 34.25 hours were defined as "women's swim," when men were prohibited. Only 25 hours were open to people of all genders. Excluding Saturday, which was left open for mixed-gender swimming because Orthodox residents would not go swimming on the Jewish Sabbath, only 12 hours during the other six days of the week were available for integrated swimming. Of note, a large majority of the hours in the evening were set aside for men, including the period from 6:45 p.m. onward every day of the week (except Saturday) and the entire period from 4:00 p.m. onward on Friday. As for Friday afternoons, Engleman testified this was done because women are at home preparing for the Sabbath during that time.
After the controversy with the plaintiffs began, the Association adopted a modified schedule:
*409 The only significant change was expanding the "adult residents only" period of "ladies' swim." Only the 6:00 to 6:45 p.m. period on Sunday, which went from "ladies' swim" to "men's swim," was allocated to a different gender than under the initial 2016 schedule. Thus this revised schedule provided for 56 hours of segregated hours (32.5 hours for men and 33.5 hours for women), along with the same 12 hours of integrated swimming Sunday through Friday.
Plaintiff Marie Curto owns a unit at A Country Place,[1] and stated in the complaint that one of the reasons she chose to live there was to go swimming with her family. Plaintiffs Steve and Diana Lusardi are a married couple who also own a unit in the residential facility. They stated in the complaint that one reason they moved back to the residential facility (where they had lived previously) was to use the pool together. Diana Lusardi suffered two strokes in 2013, which resulted in physical disabilities, and she wished to engage in pool therapy with her husband.
On June 15, 2016, a resident at A Country Place notified the Board that Curto had been swimming during a men's swim period. The next day the Board held a meeting on the issue, at which Steve Lusardi read a statement explaining why he wanted to use the pool with his wife and challenging the pool schedule as discriminatory. In the following weeks, the plaintiffs continued to use the pool in violation of the posted schedule and were fined $50 each by the Board. The plaintiffs engaged in much back-and-forth with the Board about the validity of these fines, but to no avail. They ultimately filed a complaint alleging violations of the Fair Housing Act as well as several New Jersey state laws regarding both discrimination and the rules for condominium associations.
After discovery, both parties moved for summary judgment. The District Court granted the Condominium Association's motion on the plaintiffs' Fair Housing Act claim and declined to exercise supplemental jurisdiction over the state law claims that remained. The Court's analysis of the FHA claim ran only two paragraphs and rested on its view that "the gender-segregated schedule applies to men and women equally." Curto v. A Country Place Condominium Assoc. , 2018 WL 638749, at *4 (D.N.J. 2018). This appeal followed.
II. Jurisdiction and Standard of Review
The District Court had jurisdiction under 28 U.S.C. § 1331. 28 U.S.C. § 1291 gives us appellate jurisdiction.
We review the District Court's grant of summary judgment de novo . Jutrowski v. Twp. of Riverdale , 904 F.3d 280, 288 (3d Cir. 2018). Summary judgment is warranted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view all facts "in the light most favorable to the non-moving party" and draw all reasonable inferences in that party's favor. Jutrowski , 904 F.3d at 288.
III. Analysis
The Fair Housing Act, 42 U.S.C. § 3604(b), makes it an unlawful housing practice to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities therewith, *410 because of race, color, religion, sex, familial status, or national origin." Per regulation, here 24 C.F.R. § 100.65(b)(4), this includes "[l]imiting the use of privileges, services or facilities associated with a dwelling because of race, color, religion, sex, handicap, familial status, or national origin of an owner, tenant or a person associated with him or her." The parties here do not dispute that the FHA applies to the Condominium Association or that the communal pool is a "facility associated with a dwelling" within the meaning of the statute and regulation.[2]
"Where a regulation or policy facially discriminates on the basis of the protected trait, in certain circumstances it may constitute per se or explicit discrimination because the protected trait by definition plays a role in the decision-making process." Community Services, Inc. v. Wind Gap Mun. Auth. , 421 F.3d 170, 177 (3d Cir. 2005) (internal citations and quotation marks omitted). The Condominium Association argues that its pool schedule is not discriminatory because it was not motivated by malice toward either sex. But in Wind Gap we expressly held that a showing of malice is not required "where a plaintiff demonstrates that the challenged action involves disparate treatment through explicit facial discrimination.... Rather, the focus is on the explicit terms of the discrimination."[3] Id . (internal citations and quotation marks omitted).
Looking to the express terms of the pool policy, the Association emphasizes that it allows for roughly equal swimming time for both men and women in the aggregate. But this is not enough to save the pool schedule, which discriminates in its allotment of different times to men and women in addition to employing sex as its criterion. Under the most recent version of the schedule, women are able to swim for only 3.5 hours after 5:00 p.m. on weeknights, compared to 16.5 hours for men. The schedule also assigns to men the entire period from 4:00 p.m. onward on Friday afternoons. Women with regular-hour jobs thus have little access to the pool during the work week, and the schedule *411 appears to reflect particular assumptions about the roles of men and women. Cf. United States v. Virginia , 518 U.S. 515, 533, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) (Fourteenth Amendment forbids sex classifications based on "overbroad generalizations about the different talents, capacities, or preferences" of men and women); Mississippi University for Women v. Hogan , 458 U.S. 718, 724-25, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982) (review of gender classifications must be "free of fixed notions concerning the roles and abilities" of men and women). In light of these specific inequitable features, the schedule discriminates against women under the FHA even though it provides roughly equal aggregate swimming time to each gender.[4]
* * * * *
In this context we reverse and remand the case to the District Court to enter summary judgment in favor of the plaintiffs on their claim under the Fair Housing Act. We leave to the Court whether it continues to decline the exercise of supplemental jurisdiction over plaintiffs' state law claims.

At least she owned a unit there when this lawsuit was filed. The same is true of the Lusardis. It appears, though this is not contained in the record and does not affect the outcome of our case, that some or all of the plaintiffs have subsequently moved out of the condo facility.

Although the Condominium Association's pool use policy was motivated by the Orthodox Jewish residents' religious beliefs, the Association did not mention the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb et seq . ("RFRA"), at any point in its filings in the District Court or in its merits brief before us. (At our request, the parties discussed RFRA implications in supplemental memoranda.) Thus we determine that the Association has waived any possible RFRA defense to the plaintiffs' FHA claim.
Even had the Association asserted a RFRA defense, it would lack associational standing to assert the religious free exercise rights of its Orthodox Jewish members. To have associational standing, (1) individual members must have standing in their own right, (2) the interest asserted must be germane to the purpose of the organization, and (3) neither the claim nor the relief requested must require the participation of the individual members in the lawsuit. Hunt v. Washington State Apple Advertising Com'n , 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). The first prong is easily met here, but the Condominium Association does not have a religious purpose. Moreover, religious beliefs are highly personal, and in a typical RFRA case the parties asserting a burden on their religion would provide personal testimony about their beliefs and the nature of the burden. Here we have only the Association's general assertions as to the beliefs of its Orthodox members.

This is different from when a plaintiff relies on indirect evidence of discrimination. In those cases, a plaintiff must first make out a prima facie case of discrimination, which usually means showing circumstances supporting a plausible inference of discrimination. Then the defendant must give a legitimate, nondiscriminatory reason for its actions, which the plaintiff may then show was a pretext for discrimination. See generally McDonnell Douglas Corp. v. Green , 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Plaintiffs argue that any schedule of sex-segregated swimming hours would necessarily violate the FHA, and they see the Association's arguments as akin to the "separate but equal" framework rejected in Brown v. Board of Education , 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). We need not address that contention, and its potentially far-reaching implications, as this specific pool schedule is plainly discriminatory in its specifics. Thus we also need not consider the Association's argument that prohibiting single-sex swimming hours altogether would discriminate against the Orthodox Jewish residents and thereby itself violate the FHA. Moreover, as Judge Fuentes notes in his concurrence, the Association fails to substantiate its claim that eliminating segregated swimming hours would have a discriminatory effect on the Orthodox residents at A Country Place, as we do not know how many of the Orthodox community use the pool or how many would not use a mixed-sex pool because of religious objections. See Concurring Op. at 412-13.